**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------×
JOSE BETANCES,

                *Plaintiff,*　　　　　　　　　　**1:21-cv-04831**

                *v.*

                                    **COMPLAINT**

CHESTNUT HOLDINGS OF NEW YORK INC.,

                                       *Jury Trial Requested*

                *Defendant.*
------------------------------------------------------------------------×

      Plaintiff José Betances, by his counsel, The Harman Firm, LLP, alleges for his Complaint against Defendant Chestnut Holdings of New York Inc. ("Chestnut") as follows:

**PRELIMINARY STATEMENT**

    1.    Betances worked as an accountant for Chestnut. He seeks damages, attorneys' fees, and costs against Chestnut for failing to pay him at the overtime premium rate for hours worked in excess of 40 in a work week by misclassifying him as exempt from the overtime pay requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the New York State Labor Law ("NYLL"), N.Y. Lab. Law §§ 1 *et seq.*

    2.    Chestnut paid Betances, male, less than similarly situated female accountants. Betances seeks damages, attorneys' fees, and costs against Chestnut for paying him less than similarly situated female employees, in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206, and the New York State Equal Pay Act ("NYEPA"), N.Y. Lab. Law § 194.

    3.    Chestnut terminated Betances around the time that he requested leave for a serious health condition. Betances seeks damages, attorneys' fees, and costs against Chestnut for interfering with his rights under the Family and Medical Leave Act ("FMLA") and retaliating against him by terminating his employment, in violation of the FMLA, 29 U.S.C. §§ 2601 *et seq.*

1

4. Betances's health condition rendered him disabled. Betances seeks damages, attorneys' fees, and costs against Chestnut for disability discrimination by failing to provide him with a reasonable accommodation, failing to engage in a cooperative dialogue, and terminating his employment due to his disability, in violation of New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. § 8-101 *et seq*.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under the FLSA, EPA, and FMLA.

6. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's NYLL, NYEPA, and NYCHRL, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

8. Plaintiff respectfully requests a trial before a jury.

## PARTIES

9. Betances, at all times relevant hereto, was and is a resident of New York County in the State of New York.

10. Betances worked as an accountant for Chestnut for approximately six years before his unlawful termination.

11. Upon information and belief, at all times relevant hereto, Chestnut was and is a domestic business corporation with its principal place of business located at 5676 Riverdale Ave.

Suite 307, Bronx, NY 10471. Chestnut is a family-owned real estate investment and property management firm that acquires, manages and improves multifamily properties throughout New York City, and it employs 50 plus employees.

## **STATEMENT OF FACTS**

*Background*

12. Betances graduated *summa cum laude* from Monroe College with a degree in accounting in 2014.

13. Betances began working at Chestnut as an accountant on June 15, 2015, with a salary of $37,500.

14. Betances was hired by Joshua Dressler, Controller.

*Unequal Pay Based on Sex*

15. Accountants at Chestnut were compensated in salary and bonus.

16. Throughout his employment, Betances received a lower salary than female accounts.

17. Betances and the other accountants performed work that required equal skill, effort, and responsibility, and was performed under similar working conditions.

18. Indeed, in many respects, Betances's skill and effort exceeded that of his female coworkers.

19. For instances, Betances was in charge of processing invoices and creating monthly financial packets for investors.

20. Most of this job involved working on Excel, at which Betances was superior to the other accountants.

21. Regardless, Dressler gave Betances consistently lesser raises than the women on the accounting team, resulting in the women being paid at a significantly higher rate than Betances.

22. The highest salary Chestnut paid Betances was $54,000.

23. The female accountants, however, made in excess of $60,000 in salary, even though Betances was more knowledgeable of the position and completed his work more efficiently than they did.

24. Chestnut also paid Betances lower bonuses.

25. In his last annual meeting, in and around December 2020, Betances received a bonus of only $500.

26. The typical bonus was at minimum from $2,000 to as high as $20,000.

*Unpaid Overtime*

27. Betances worked unpaid overtime throughout his employment with Chestnut.

28. The regular, 40 hours work week at Chestnut is from 8:45 a.m. to 5:30 p.m. with a one hour paid lunch.

29. Betances would typically work from 8:45 a.m. to 7:00 p.m. (with one instance of Mr. Betances working as late as 7:45 p.m.)  when he stayed late.

30. In and around November 2015, when the accounting team first created a purchase order log, Betances stayed late figuring out the layout and formulas.

31. Every year at the start of the tax season (January 1 to April 15), Betances stayed late to put together the tax forms as well as creating the sign off sheets for employees

32. Also, in and around 2018 and 2019, Betances stayed late to create tax Forms 1094 and 1095 for all employees.

33. Betances also stayed late to create forms for other people to use such as stock items list, reimbursement forms, and time off request forms, among other things.

34. Whenever Betances stayed late, Dressler told him to come in an hour later the next day regardless how long Betances had actually been working.

35. Chestnut never paid his overtime at the overtime premium rate for each hour worked in excess of 40 in a given week.

36. Betances worked overtime regularly with specific weeks being on or around the week(s) of July 13, 2016; January 24, 2017; April 4, 2017; January 24, 2018; and January 24, 2019.

37. At all relevant times, Chestnut was aware that Betances was working unpaid overtime.

38. In and around 2019, during a meeting in Dressler's office, in response to Betances's complaint that his workload required him to work overtime, Dressler threatened him with demotion or even termination by telling him he should "go back to work in a warehouse."

*Unlawful Termination*

39. On or about February 19, 2021, Betances had a seizure, which required him to be hospitalized.

40. At the hospital, Betances suffered from a second seizure, during which time fell onto his shoulder and broke a vertebra.

41. As a result of the fall, Betances required surgery.

42. Betances was also given a neck brace, which he was required to wear for two months.

43. That same day, February 19, 2021, Betances informed Dressler of his serious health condition and the medical emergency in which he found himself.

44. On or about February 23, 2021, Betances was discharged from the hospital; however, he was prescribed, and was taking, pain killers, anti-inflammatories, and blood thinners to treat his conditions.

45. On March 1, 2021, Dressler asked Betances to call him, which Betances did that day.

46. Dressler started the call by asking if Betances was in a lot of pain and if there was medicine that Betances was taking for it.

47. Betances confirmed that he was in a lot of pain and under medication.

48. Without any warning or explanation, Dressler then told Betances that Betances's employment with Chestnut was terminated, effective immediately.

49. Shortly after, Chestnut sent Betances an email containing a severance agreement and general release.

50. By email, Betances reiterated to Dressler that Betances only needed to recuperate and would be able to return to work.

51. Dressler, however, continually refused to entertain any disability accommodation.

52. To make matters worse, Ben Rieder, Chief Operating Officer, sent a company-wide email falsely stating that Betances had "left the company effective immediately," when Rieder knew that Betances had been terminated.

53. Rieder's email implied that Betances had suddenly quit on his own accord and without any courtesy to his employer or colleagues.

54. Rieder's email harmed Betances' reputation among his peers and career network.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**Unpaid Overtime in Violation of the FLSA**

55. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56. At all relevant times, Plaintiff was employed by Defendant within the meaning of the FLSA.

57. The FLSA mandates that employers compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 in a work week.

58. Defendant willfully and intentionally violated the FLSA's overtime requirement by not paying Plaintiff at the overtime premium rate for overtime worked.

59. Defendant did not have a good-faith belief for believing that its conduct did not violate the FLSA.

60. Plaintiff seeks to recover from Defendant his unpaid overtime compensation, liquidated damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

## SECOND CAUSE OF ACTION
### Unpaid Overtime in Violation of the NYLL

61. Plaintiffs hereby reallege and incorporates each and every allegation contained in paragraphs 1 through 60 with the same force as though separately alleged herein.

62. At all relevant times, Plaintiff was employed by Defendant within the meaning of the NYLL.

63. The NYLL mandates that employers must compensate employees at one-and-a-half times their normal hourly rate for all hours worked over 40 in a work week.

64. Defendant willfully and intentionally violated the NYLL's overtime requirement by not paying Plaintiff at the overtime premium rate for any overtime worked.

65. Defendant did not have a good-faith belief for believing that its conduct did not violate the NYLL.

66. Plaintiff seeks to recover from Defendant his unpaid overtime compensation, liquidated damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

### THIRD CAUSE OF ACTION
### Failure to Pay Equal Pay in Violation of the EPA

67. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 65 with the same force as though separately alleged herein.

68. The EPA prohibits employers from paying employees who perform substantially similar work, requiring substantially equal skill in substantially similar environments, disparately because of the employees' gender.

69. Defendant paid Plaintiff a significantly lower hourly wage than the female accounts, who performed substantially similar work.

70. Defendant willfully and intentionally violated the EPA's equal pay requirement by not paying Plaintiff the same amount as female accountants.

71. Defendant did not have a good-faith belief for believing that its conduct did not violate the NYLL.

72. Plaintiff seeks to recover from Defendant the pay differential between what he was paid and what his colleagues of the opposite sex were paid, liquidated damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

### FOURTH CAUSE OF ACTION
### Failure to Pay Equal Pay in Violation of the NYEPA

73. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 72 with the same force as though separately alleged herein.

74. The NYEPA prohibits an employer from paying an employee a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions.

75. Defendant paid Plaintiff at a rate less than the rate at which it compensated female accountants for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions.

76. Defendant violated the NYEPA.

77. Defendant willfully and intentionally violated the NYEPA's equal pay requirement by not paying Plaintiff the same amount as female accountants who performed substantially similar work.

78. Defendant did not have a good-faith belief for believing that its conduct did not violate the NYLL.

79. Plaintiff seeks from Defendant the pay differential between what he was paid and what his colleagues of the opposite sex were paid, liquidated damages, emotional distress damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

**FIFTH CAUSE OF ACTION**
**Interference under the FMLA**

80. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 79 with the same force as though separately alleged herein.

81. Under the FMLA, an employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" in order to "care for …[a] parent [with] a serious health condition." 29 U.S.C. §§ 2612(a)(1), 2612(a)(1)(C).

82. A failure to provide employees with adequate FMLA notice results in an interference claim where the lack of notice caused the employee to forfeit FMLA Leave.

83. Plaintiff had a serious health condition.

84. Defendant failed to inform Plaintiff of his right to take FMLA leave and terminated his employment.

85. As a result of Defendant's failures, Plaintiff was prevented from taking FMLA leave.

86. As such, Defendant interfered with Plaintiff's right to FMLA leave and, therefore, violated the FMLA.

87. Defendant willfully and intentionally violated the FMLA by not providing Plaintiff with notice of his right to leave.

88. Defendant did not have a good-faith belief for believing that its conduct did not violate the FMLA.

89. Plaintiff seeks from Defendant equitable relief, economic damages, liquidated damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

## SIXTH CAUSE OF ACTION
### Retaliation under the FMLA

90. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 89 with the same force as though separately alleged herein.

91. Under the FMLA, an employee "shall be entitled to a total of 12 workweeks of leave during any 12-month period" in order to "care for …[a] parent [with] a serious health condition." 29 U.S.C. §§ 2612(a)(1), 2612(a)(1)(C).

92. Plaintiff had a serious health condition.

93. Plaintiff requested leave by asking for time off to recuperate before returning to work.

94. Instead of providing Plaintiff with leave, Defendant terminated his employment.

95. Defendant's decision to terminate Plaintiff was directly related to his need for FMLA leave. Had Plaintiff not asked for and needed leave, he would not have been terminated.

96. Defendant willfully and intentionally violated the FMLA by not terminating Plaintiff for requesting medical leave.

97. Defendant did not have a good-faith belief for believing that its conduct did not violate the FMLA.

98. Plaintiff seeks from Defendant equitable relief, economic damages, liquidated damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

**SEVENTH CAUSE OF ACTION**
**Failure to Engage in the Cooperative Process in Violation of the NYCHRL**

99. Plaintiff hereby realleged and incorporates each and every allegation contained in paragraphs 1 through 98 with the same force as though separately alleged herein.

100. Under the NYCHRL, a failure to engage in a cooperative dialogue with an individual requesting an accommodation is an independent violation of the NYCHRL. Upon reaching a final determination at conclusion of a cooperative dialogue, an employer must provide

any person requesting an accommodation who participated in the cooperative dialogue with a written final determination identifying any accommodation granted or denied.

101. Plaintiff requested a reasonable accommodation, specifically, limited leave.

102. At no time did Defendant engage in the required cooperative dialogue, as required under the NYCHRL. At no time did Defendant issue any written decision as to why a reasonable accommodation was denied or granted. Defendant did not grant Plaintiff any accommodation.

103. As such, Defendant has violated the NYCHRL.

104. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, back and front pay, and emotional distress damages, all in amounts to be determined at trial.

105. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

106. Plaintiff seeks from Defendant economic damages, emotional distress damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

**EIGHTH CAUSE OF ACTION**
**Failure to Provide a Reasonable Accommodation in Violation of the NYCHRL**

107. Plaintiff hereby realleged and incorporates each and every allegation contained in paragraphs 1 through 106 with the same force as though separately alleged herein.

108. The NYCHRL requires employers to provide a reasonable accommodation to individuals with disabilities.

109. Defendant failed to provide an accommodation for Plaintiff's disability.

110. As a direct and proximate consequence of Defendant's discrimination, Plaintiff has suffered and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

111. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, back and front pay, and emotional distress damages, all in amounts to be determined at trial.

112. Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

113. Plaintiff seeks from Defendant economic damages, emotional distress damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

### NINETH CAUSE OF ACTION
### Wrongful Termination Based on Disability Discrimination in Violation of the NYCHRL

114. Plaintiff hereby realleged and incorporates each and every allegation contained in paragraphs 1 through 113 with the same force as though separately alleged herein.

115. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, and privileges of employment on the basis of disability.

116. Defendant violated the NYCHRL when it terminated Plaintiff's employment, at least in part, because of his disability.

117. As a direct and proximate consequence of Defendant's disability discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, back and front pay, and emotional distress damages, all in amounts to be determined at trial.

118.     Defendant's discriminatory treatment of Plaintiff involved a conscious disregard of Plaintiff's rights or conduct so reckless as to amount to such disregard.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

119.     Plaintiff seeks from Defendant economic damages, emotional distress damages, punitive damages, interest, attorneys' fees, and costs, as well as any other remedies the Court deems proper.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

B. For the second cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

C. For the third cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

D. For the fourth cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

E. For the fifth cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

F. For the sixth cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

G. For the seventh cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

H. For the eighth cause of action, damages, interest, attorneys' fees, and costs to be determined at trial;

I. For the nineth cause of action, damages, interest, attorneys' fees, and costs to be determined at trial; and

J. For such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 2, 2021

**THE HARMAN FIRM, LLP**

By: *[signature]*

Walker G. Harman, Jr. [WH-8044]
*Attorney for Plaintiff*
244 Fifth Ave., Suite H211
New York, NY 10001
(646) 248-2288
wharman@theharmanfirm.com